IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| MARY RHODEN WALFORD | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-09-CV-0629-BD |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mary Rhoden Walford seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision is reversed.

I.

Plaintiff alleges that she is disabled as a result of obesity, hypertension, and depression. After her application for disability benefits was denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge. Hearings were held on March 7, 2006, June 14, 2006, April 4, 2007, and July 3, 2007. At the time of the final hearing, plaintiff was 46 years old. She has two college degrees and past work experience as a foreclosure supervisor and a mortgage claims analyst. Plaintiff has not engaged in substantial gainful activity since December 22, 1999.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability benefits. Although the medical evidence established that plaintiff suffered from severe obesity and depression, as well as non-severe hypertension, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further

determined that plaintiff had the residual functional capacity to perform a limited range of medium work activity, but could not return to her past relevant employment. Relying on the testimony of a vocational expert, the judge found that plaintiff was capable of working as a kitchen helper, a cleaner and housekeeper, and an assembler of fishing reels -- jobs that exist in significant numbers in the national economy. In view of her age, education, and exertional capacity for medium work, the judge determined that plaintiff was not disabled under the Medical-Vocational Guidelines. Plaintiff appealed that decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal district court.

II.

In four grounds for relief, plaintiff contends that: (1) the ALJ improperly evaluated her obesity under SSR 02-1p; (2) the judge erred in finding that her hypertension, which results in headaches and dizziness, is not severe; (3) the ALJ failed to properly evaluate the opinions of her treating physician; and (4) substantial evidence does not support the finding that she can perform other work in the national economy.

A.

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *see also Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993). It is more than a scintilla but less than a preponderance. *See Richardson*, 91 S.Ct. at 1427. The district court may not reweigh the evidence or substitute its judgment for that of the Commissioner, but must

scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *Id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. This determination is made using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See generally*, 20 C.F.R. § 404.1520(b)-(f). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing other work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995), *citing Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *Id.* However, procedural perfection is not required. The court will reverse an administrative ruling only if the claimant establishes prejudice. *See Smith v. Chater*, 962 F.Supp. 980, 984 (N.D. Tex. 1997).

B.

Plaintiff contends that the ALJ failed to properly consider her obesity-related impairments, including knee pain, in determining whether she has the residual functional capacity to perform other gainful and substantial work in the economy. Under the social security regulations, an ALJ must assess "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment," and explain how he reached his

conclusions on whether obesity caused any physical or mental limitations. *See* SSR 02-1p, 2000 WL 628049 at *6-7 (Sept. 12, 2002). As SSR 02-1p recognizes:

> Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching[.]
>
> The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

*Id.*, 2000 WL 628049 at *6. Had the ALJ properly applied SSR 02-1p, plaintiff believes the judge would have determined that her obesity prevented her from performing the exertional requirements of medium work, including crawling, climbing, stooping, crouching, kneeling, and standing or walking for about six hours in an eight-hour workday. (*See* Tr. at 388-89, 458-59).[1]

In support of her argument, plaintiff points to a Physical Residual Functional Capacity Questionnaire completed by Dr. Chong Liu, her treating physician, on February 23, 2006. Dr. Liu noted that plaintiff presented with chronic pain caused by "arthritic changes." (*Id.* at 460). Due to her obesity, plaintiff could not squat, crawl, climb, stoop, crouch, or kneel at all, and could only occasionally bend and reach up. (*Id.* at 459). Dr. Liu also found that plaintiff could only occasionally lift up to 10 pounds, could only stand or walk for one-half hour during an eight-hour workday, and needed at least four hours during the workday to lie down or recline. (*Id.* at 457-58).

---

[1] At the time of the administrative hearing, plaintiff stood approximately 5'5" tall, weighed more than 350 pounds, and had a Body Mass Index ("BMI") of 61.1. (*See* Tr. at 48, 450). Although the ALJ found that plaintiff's obesity was a severe impairment, he determined that she had the residual functional capacity to perform medium work with some restrictions as a result of her mental impairments. (*See id.* at 48).

Although plaintiff could tolerate her pain, it was enough to cause "some handicap in the performance of the activity precipitating the pain[.]" (*Id.* at 460). Dr. Liu concluded that plaintiff was unable to reenter the workforce due to functional limitations related to her obesity. (*Id.* at 461). At least some of those limitations appear to be related to obesity-related knee pain first reported by plaintiff in 2005. (*Id.* at 450, 460-61). When Dr. Liu examined plaintiff in 2007, he noted swelling and deformities in the knee joint consistent with degenerative joint disease. (*Id.* at 509, 511). Dr. Liu noted that plaintiff's knee pain had persisted for two years, was aggravated by exertion, and was not relieved by medication. (*Id.*). At the administrative hearing, Dr. Vern Laing, a non-treating medical expert, was asked if there was sufficient evidence in the record to evaluate plaintiff's knee impairment. After acknowledging that "weight is always an issue" in evaluating knee pain, Dr. Laing questioned the lack of any objective testing:

> Yeah, well it's important. I mean, it would be nice to have that for sure because as we point out her [*sic*], of course you know that used to be a listing but it's no longer a listing but any degree of arthritis with weight of her amount would have been [a] listing in the past but it certainly would be a factor if we had objective evidence of a knee problem but without that it's kind of speculating. She could realistically have pain in her knees from just the fact that she weighs a lot and could have pain in her knees.

(*Id.* at 94-95).

The ALJ ultimately rejected Dr. Liu's conclusion that plaintiff was limited to less than sedentary work because that opinion was based on "slurred speech, life style deconditioning, and diminished concentration, which do not relate to physical aspects of record[.]" (*Id.* at 49). The judge noted the absence of any diagnostic findings to support the restrictions suggested by Dr. Liu, as well as the lack of "evidence to show the claimant has sought to lose weight, as would be expected of one alleging disability secondary to obesity." (*Id.* at 49, 51). Relying on the testimony of Dr. Laing, the

ALJ found that "there is no basis in the clinical record for restricting standing and walking to one-half hour and then lying down for four hours or for restriction of lifting to less than ten pounds." (*Id.* at 49). The judge went on to conclude that plaintiff was capable of performing unskilled medium work with no public contact. (*Id.* at 51).

Although the hearing decision is replete with references to plaintiff's obesity generally, the ALJ failed to cite SSR 02-1p and, more importantly, failed to apply the regulation properly. SSR 02-1p specifically identifies joint pain exacerbated by arthritis and obesity as a condition that could potentially limit functional capacity. *See* SSR 02-1p, 2000 WL 628049 at *6. Yet the ALJ all but ignored plaintiff's complaints of right knee pain, (*see* Tr. at 450), Dr. Liu's finding of deformities in the knee joint consistent with degenerative joint disease, (*see id.* at 509, 511), and Dr. Laing's testimony that "weight is always an issue" in evaluating knee pain, (*see id.* at 94). *See Schriner v. Comm'r, Soc. Sec. Admin.*, No. 3-08-CV-2042-N, 2010 WL 2941120 at *9 (N.D. Tex. Jun. 22, 2010), *rec. adopted*, 2010 WL 2944782 (N.D. Tex. Jul. 22, 2010) (ALJ's failure to discuss testimony of medical examiner that "obesity is something that can affect or exacerbate joint disease with weight-bearing joints, especially the knees[,]" was prejudicial legal error requiring reversal). Instead of addressing this evidence, the ALJ focused on plaintiff's "life style deconditioning" and her failure to lose weight. (*See id.* at 49, 51). Even if there was evidence in the record that plaintiff failed to follow a weight-loss program prescribed by her doctor, which there is not, SSR 02-1p makes clear that:

> Before failure to follow prescribed treatment for obesity can become an issue in a case, we must first find that the individual is disabled because of obesity or a combination of obesity and another impairment(s). Our regulations . . . provide that, in order to get benefits, an individual must follow treatment prescribed by his or her physician if the treatment can restore the ability to work, unless the individual has an acceptable reason for failing to follow the

> prescribed treatment. We will rarely use "failure to follow prescribed treatment" for obesity to deny or cease benefits.

SSR 02-1p, 2000 WL 628049 at *9. Because the ALJ never found that plaintiff was disabled due to obesity or obesity-related impairments, her failure to lose weight has no bearing on whether she is or is not disabled. *See Scheibel v. Astrue*, No. C10-948-JLR-MAT, 2011 WL 219637 at *11 (W.D. Wash. Jan. 4, 2011), *rec. adopted*, 2011 WL 250592 (W.D. Wash. Jan. 21, 2011) (failure to lose weight is not grounds for discrediting plaintiff's testimony regarding limitations caused by obesity).

The Commissioner argues that the ALJ's failure to discuss SSR 02-1p did not prejudice plaintiff because there is substantial evidence in the record to support a finding that she does not have an obesity-related knee impairment. In particular, the Commissioner points to one physical examination that showed plaintiff had full range of motion in her right knee with no swelling, (*see* Tr. at 332), and another examination that revealed plaintiff had normal flexion and extension, full range of motion, and no tenderness in the knee, (*see id.* at 509-12). The court notes that the first examination was conducted in 2002 -- *three years* before plaintiff began experiencing chronic knee pain. With respect to the second examination, the fact that plaintiff had full range of motion and normal flexion and extension of the knee does not mean she could walk or stand without significant pain for an extended period of time. In fact, the second examination cited by the Commissioner was performed by Dr. Liu -- the same doctor who found that plaintiff was severely limited in her ability to stand and walk, and concluded that plaintiff was unable to reenter the workforce due to functional limitations related to her obesity. (*See id.* at 457-58, 461). *See also Lovelace v. Bowen*, 813 F.2d 55, 60 (5th Cir. 1987) (relevant question in determining work limitation is not amount of pain experienced when at rest, but amount of pain experienced while trying to work). The Commissioner

also relies on plaintiff's own testimony that her mental problems were "worse" than her physical problems as evidence that obesity did not limit her functioning. (*See* Tr. at 105). That plaintiff perceived her mental problems as "worse" does not mean that her obesity-related knee pain did not limit her ability to work. The ALJ found that plaintiff's mental problems were severe enough to limit her to "simple, repetitive non leadership job functions with not more than occasional interaction with the public." (*See id.* at 51). Even if plaintiff's obesity-related knee problems were *less* limiting than her mental problems, they still could limit her considerably.

Where an ALJ fails to comply with SSR 02-1p, courts generally find that the claimant has been prejudiced unless: (1) the ALJ limits the claimant to sedentary work, or (2) the record is totally devoid of medical evidence establishing any obesity-related limitations. *See, e.g., Bassett v. Astrue*, No. 4-09-CV-0142-A, 2010 WL 2891149 at *13 (N.D. Tex. Jun. 25, 2010), *rec. adopted*, 2010 WL 2912251 (N.D. Tex. Jul. 20, 2010) (denying relief in part due to plaintiff's failure to identify evidence indicating that obesity limited her ability to function at work); *Medrano v. Astrue*, No. A-09-CA-584-SS, 2010 WL 2522202 at *6 (W.D. Tex. Jun. 17, 2010) (no prejudice resulted from failure to explain whether obesity caused any physical limitations where ALJ limited plaintiff to only sedentary work); *Gannon v. Astrue*, No. 3-07-CV-1057-N, 2008 WL 4490738 at *9 (N.D. Tex. Oct. 3, 2008) (plaintiff failed to show prejudice where residual functional capacity assessments did not indicate that obesity caused any limitations). Neither of those situations exist here -- the ALJ found that plaintiff was able to perform unskilled medium work and the record contains at least one residual functional assessment that recognizes obesity as a primary factor limiting plaintiff's ability to work. (*See* Tr. at 51, 460-61). Had the ALJ considered plaintiff's chronic knee pain, he might have limited her to sedentary work or determined that she was unable to perform any of the occupations cited by the vocational expert. Under these circumstances, remand is required.

C.

Remand is also warranted because the ALJ failed to develop the record on the issue of plaintiff's obesity-related knee pain. It is well-established that the ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Cornett v. Astrue*, 261 Fed.Appx. 644, 647, 2008 WL 58822 at *2 (5th Cir. Jan. 3, 2008); *Ripley*, 67 F.3d at 557. This duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Kane v. Heckler*, 731 F.2d 1216, 1220-221 (5th Cir. 1984) (citing cases). When the existing medical evidence is inadequate to make a disability determination, the social security regulations require the ALJ to develop the record by recontacting the claimant's medical sources or referring the claimant for a consultative examination. *See* 20 C.F.R. § 404.1512(e)-(f). Additional evidence or clarifying reports may be necessary when the medical opinion of a treating source appears lacking or inconsistent. *See* SSR 96-2p, 1996 WL 374188 at *4 (Jul. 2, 1996).

The only doctor who personally examined plaintiff after her initial complaint of knee pain was Dr. Liu, who determined that obesity-related problems prevented her from returning to work. (*See* Tr. at 460-61). Dr. Laing, a non-treating medical expert, recognized that "weight is always an issue in a weight bearing joint," like the knee, and said "it would be nice" to have objective testing to evaluate the source of her knee pain. (*Id.* at 94-95). Instead of inquiring further into this issue, the ALJ rested his decision, at least in part, on the absence of "diagnostic findings" in the record. (*Id.* at 49). The ALJ was obligated to develop the record either through objective testing or, at the very least, by assessing the credibility of plaintiff's subjective complaints of knee pain. A remand is required for that purpose. *See Johnson v. Astrue*, No. H-08-CV-3658, 2010 WL 148411 at *18 (S.D. Tex. Jan. 11, 2010) ("To the extent that there was little evidence before the ALJ from health care providers which directly addresses [plaintiff's] extreme obesity and any limitations resulting

therefrom, the ALJ should develop the record on the issue of [plaintiff's] obesity and how her obesity impacted her ability to function and work, as outlined in SSR 02-01p.").

## CONCLUSION

The hearing decision is reversed and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.[2]

SO ORDERED.

DATED: June 10, 2011.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE

---

[2] By remanding this case for further administrative proceedings, the court does not suggest that plaintiff is or should be found disabled.